IOWA–MO ENTERPRISES,
INC., Appellee,

v.

Herman AVREN and Vicki
Avren, Appellants.

IOWA–MO ENTERPRISES,
INC., Appellant,

v.

Herman AVREN and Vicki
Avren, Appellees.

Nos. 79–1556, 79–1560.

United States Court of Appeals,
Eighth Circuit.

Submitted May 20, 1980.

Decided Jan. 30, 1981.

---

Edward C. Cody, St. Louis, Mo., for Herman and Vicki Avren.

Frederick H. Mayer, St. Louis, Mo., for Iowa-Mo. Enterprises.

Before HENLEY and McMILLIAN, Circuit Judges, and ROY, District Judge.*

HENLEY, Circuit Judge.

Herman and Vicki Avren appeal from a judgment of the district court,[1] entered on jury verdicts, holding the Avrens liable for damages to Iowa-Mo Enterprises, Inc. (Iowa-Mo) for breach of their agreement to purchase certain real property and rejecting the Avrens' counterclaim for return of their earnest money. Contending that the amount of damages awarded was inadequate, Iowa-Mo cross-appeals from the denial of its post-trial motion to amend the judgment, or, in the alternative, to grant a new trial limited to the issue of damages. For reasons to be stated, we affirm the judgment of the district court.

## BACKGROUND

Defendants Herman Avren and his wife, Vicki, are residents of St. Louis County, Missouri. Plaintiff Iowa-Mo is an Iowa-chartered corporation having its principal place of business in Des Moines, Iowa. By written contract dated August 20, 1976 the Avrens agreed to purchase the Kimberling Inn, a motel located in southwestern Missouri and owned by Iowa-Mo. In exchange for the Inn, the Avrens were to assume the outstanding first mortgage debt of $727,500.00 on the property and were to convey to Iowa-Mo a commercial lot and building in Edwardsville, Illinois, owned by Mrs. Avren and variously valued between $215,000.00 and $300,000.00. Iowa-Mo promised to transfer title to the Inn by warranty deed and to provide the Avrens, on or before closing, with a commitment for a title insurance policy

> insuring absolute fee simple title to the real estate in Buyers free of all liens and encumbrances except a first mortgage lien to Great Southern Savings & Loan Association and except as to all restrictions, easements and covenants now of record, zoning laws and ordinances and

general real estate taxes due after the date of closing.

Closing of the sale was set for September 1, 1976. Upon signing the agreement, the Avrens deposited $5,000.00 earnest money.

On August 31, one day before the scheduled closing, Herman Avren called Charles Wasker, the secretary of Iowa-Mo, and told him that because of misrepresentations by Iowa-Mo agents during negotiations, the Avrens would not complete the transaction. In a conversation the next day with John Neiman, Iowa-Mo's president, Avren repeated his accusation of fraud and again refused to go through with the purchase. Shortly thereafter Iowa-Mo received a telegram from the Avrens denying any obligation to buy the Inn and requesting return of their earnest money.

Within two weeks after the Avrens' repudiation, Iowa-Mo sold the Inn for $100,000.00 cash and assumption of the first mortgage loan, which had been paid down to $720,000.00 by Iowa-Mo. Closing of this sale was originally scheduled for October 1, 1976, but did not actually take place until October 29.

In January of 1977 Iowa-Mo brought this diversity action against the Avrens in federal district court, seeking damages in excess of $247,000.00 for breach of contract. The Avrens denied liability and counterclaimed for return of their $5,000.00 earnest money on three alternative grounds. The only one of these defenses involved in the issues on appeal is that, for reasons unrelated to the Avrens' prior repudiation, Iowa-Mo would have been unable to perform on September 1 as promised.

On March 21, 1979, after an eight-day trial, the jury returned two general verdicts in favor of Iowa-Mo, assessing its damages at $35,000.00 and rejecting the Avrens' counterclaim. The district court entered a judgment thereon, and the Avrens moved for judgment n. o. v. or for a new trial.

---

\* The Honorable Elsijane Trimble Roy, United States District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

Iowa-Mo maintained that the damages awarded were inadequate, and moved for amendment of the judgment or for a new trial solely on the issue of damages. On April 11, 1979, the district court denied all post-trial motions, and both sides have appealed.

The Avrens claim that the district court committed reversible error in (1) excluding evidence that Iowa-Mo had forfeited its certificate to do business in Missouri; (2) giving Instruction No. 7, plaintiff's verdict director; (3) giving Instruction No. 8, on the measure of plaintiff's damages; and (4) making certain other evidentiary rulings. On its cross-appeal Iowa-Mo argues that the jury's finding of liability was correct, but that the evidence of damages adduced at trial, when viewed most favorably to the Avrens, required a verdict of at least $122,500.00 for Iowa-Mo.

## THE AVRENS' APPEAL

### Iowa-Mo's License To Do Business in Missouri.

The Avrens' first argument for reversal is based on Missouri's statutory requirement that a foreign corporation obtain a "certificate of authority" from the secretary of state before transacting business in the state. Mo.Rev.Stat. § 351.570(1) (1978). The following sanctions are provided:

> Every foreign corporation now doing business in or which may hereafter do business in this state which shall neglect or fail to comply with the [certification requirement] shall be subject to a fine of not less than one thousand dollars . . .; in addition to which penalty, no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the [sic] contract or tort, while the requirements of this chapter have not been complied with.

Mo.Rev.Stat. § 351.635 (1978). It is undisputed that on January 1, 1976 Iowa-Mo forfeited its certificate to do business in Missouri, and, as of the time of trial, had not been reinstated.

At trial the Avrens raised for the first time the issue of Iowa-Mo's forfeiture and sought to introduce evidence thereof in order to prove, first, that Iowa-Mo could not bring suit on the contract in Missouri and, second, that Iowa-Mo would not have been legally able to perform on September 1, 1976, as the contract required. This evidence consisted of (1) testimony by an employee of the Missouri secretary of state concerning the official record of forfeiture, and (2) a document, mailed to the Avrens upon request, verifying the forfeiture and bearing the signature and official seal of the secretary of state. Upon Iowa-Mo's objection, the district court excluded the evidence for two reasons: (1) the Avrens had not pleaded Iowa-Mo's lack of capacity to sue by "specific negative averment," as required by Federal Rule of Civil Procedure 9(a); and (2) the Avrens had not listed the evidence on their pretrial submission, identifying possible witnesses and exhibits, as required by the court's pretrial order and local court rule.

On appeal the Avrens challenge this ruling on the ground that the proffered evidence concerned Iowa-Mo's substantive right to recover on the contract, not its capacity to sue in federal court. To afford Iowa-Mo a remedy in this diversity action when it had no right enforceable in the Missouri courts would, appellants claim, violate the principles established in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. Relevant here are *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), and *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). In regard to their failure to list the evidence on their pretrial submission, the Avrens explain that they first learned of Iowa-Mo's forfeiture and obtained official confirmation thereof after their submission had been filed. Appellants also assert that a pretrial order "ordinarily does not require the listing of a records custodian as a trial witness."

We believe that the second reason stated by the district court fully justified

the exclusion of the evidence in question, regardless of the purpose for which the Avrens offered the evidence,[2] and we therefore affirm the court's exclusionary ruling on this ground. This court has held that a district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the court's pretrial orders, and such a ruling will be reversed on appeal only for abuse of discretion. *See Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 896–98 (8th Cir. 1978); *United States v. Pirnie*, 472 F.2d 712 (8th Cir. 1973); *Labbee v. Roadway Express, Inc.*, 469 F.2d 169, 172 (8th Cir. 1972). *See also* Fed.R.Civ.P. 37(b)(2)(B). The procedural history of this case clearly indicates that the district court did not abuse its discretion by excluding the evidence of Iowa-Mo's forfeiture. The complaint initiating this action was filed on January 3, 1977, and trial did not begin until March 12, 1979. During the interim both parties conducted extensive discovery proceedings, including the taking of more than fifteen depositions in Des Moines, St. Louis and the Kimberling City area. By leave of the court, defendants filed their counterclaim in March, 1978. The date of trial was set and then postponed no fewer than nine times. Against this background, defendants' counsel claimed at trial that he had first been alerted to the possibility of Iowa-Mo's unlicensed status by a document which he saw at the next to last pretrial conference, in late February, 1979. He did not receive official confirmation of Iowa-Mo's noncompliance until the first week of March, about one week after defendants' pretrial submission had been filed (on February 22) and one week before trial began.[3]

In ruling on the admissibility of this evidence, the district court stated that defendants could and should have filed a supplementary exhibit when they received the official verification of Iowa-Mo's forfeiture, even though the date was close to trial. The record shows that such a supplementary list was filed by plaintiff on February 27, and there is no reason to believe that the court would not have accepted a similar list filed by defendants a few days later, if defendants had chosen to file one. We are aware of no rule distinguishing, as appellants contend, between a records custodian and other prospective witnesses insofar as their listing on a pretrial submission is required. It may be true that the official confirmation of Iowa-Mo's forfeiture was "self-authenticating," since it carried the signature and seal of the Missouri secretary of state. *See generally* C. McCormick, Handbook of the Law of Evidence § 228 (2d ed. E. Cleary 1972). But the trial court made it clear that the problem in this case was not authentication, but unfair surprise to the opposing party. We agree that the admission of the proffered evidence at trial, without any notice to Iowa-Mo, would have been highly prejudicial. The district court did not err in excluding the evidence.

Our holding does not provide Iowa-Mo with a substantive right which it would not have in the Missouri courts. Those courts have uniformly held that a defendant's failure to plead a plaintiff foreign corporation's noncompliance with the certification requirement waives the defense. *See, e. g., United Shoe Mach. Co. v. Ramlose*, 210 Mo. 631, 649–50, 109 S.W. 567, 572 (1908); *Weldon, Williams & Lick, Inc. v. L. B. Poultry Co.*, 537 S.W.2d 868, 872 (Mo.Ct.App.1976); *Mergenthaler Linotype Co. v. Hays*, 182 Mo. App. 113, 125, 168 S.W. 239, 242 (1914); *Cooper Wagon & Buggy Co. v. Cornell*, 140 Mo.App. 442, 443, 124 S.W. 53, 54 (1910);

---

2. The court's alternative reason, that the Avrens failed to satisfy the pleading requirement of Fed.R.Civ.P. 9(a), would apply only to the Avrens' use of the evidence to prove Iowa-Mo was precluded from suing. The Avrens' other purpose, however, was to negate an element of plaintiff's claim: ability to perform the contract. Since this second intended use of the evidence raised no affirmative defense or matter of capacity, the general denial in the Avrens' Answer would satisfy any pleading requirement.

3. We imply no criticism of defendants' counsel for failure to learn sooner of Iowa-Mo's forfeiture. Because of a change of attorneys, counsel who represented the Avrens at trial and on appeal first entered this case five months prior to trial.

*Scientific American Club v. Horchitz*, 128 Mo.App. 575, 579, 106 S.W. 1117, 1118 (1907).

### Plaintiff's Verdict Director.

■ Next, the Avrens contend that the district court erred in giving Instruction No. 7, plaintiff's verdict director. The court instructed the jury to return a verdict for Iowa-Mo if the jury found four propositions to be true, the second of which was that

> plaintiff would have been prepared to perform *all material conditions* required of it by the date the contract should have been completed but for defendants' announcement that they would refuse to perform the contract .... (Emphasis added.)

Appellants object to this paragraph, and particularly the italicized language, on the grounds that (1) it allowed the jury to speculate about which conditions were "material" and about what plaintiff would have been able to do, (2) it failed to state the requirement that plaintiff prove his performance of all conditions precedent, and (3) there was no evidence from which the jury could find that plaintiff would have been able to perform "all material conditions" of the contract.

Rule 51 of the Federal Rules of Civil Procedure provides in part:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

At the instructions conference in the district court, the defense counsel's objection to Instruction No. 7 was as follows:

> This instruction was a compromise. I object to it for the reason it does say "all material conditions." I argued yesterday that I thought they should be prepared to perform all conditions. The word "material" is supplied by [plaintiff's counsel], and, finally, is a compromise. I agreed to that on the theory that we could argue all the conditions to the contract.

.  .  .  .  .

> ... I don't want to be precluded from arguing there are some conditions under that contract which our evidence shows that they couldn't perform and that we deemed it material.
>
> THE COURT: Your objection is putting in the word "material"?
>
> MR. CODY: Right.

Defendants made no other objection to the instruction and neither offered nor requested an additional instruction defining "material." Although the remarks of defendants' counsel clearly showed that inclusion of the word "material" was the matter objected to, it may be doubted that the grounds of the objection were stated "distinctly," as required by Fed.R.Civ.P. 51. Since the first two grounds of objection which the Avrens raise on appeal were not presented to the district court with specificity, we would be justified in holding that those grounds will not be considered on appeal, *see, e. g., Palmer v. Hoffman*, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943); *Polk v. Ford Motor Co.*, 529 F.2d 259, 269 (8th Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976), and in reviewing the instruction only for plain error, which, if unreversed, would result in a miscarriage of justice, *see, e. g., Wright v. Farmers Co-op*, 620 F.2d 694, 698–99 (8th Cir. 1980); *Mid-America Food Serv., Inc. v. ARA Serv., Inc.*, 578 F.2d 691, 695–96 (8th Cir. 1978); *Polk v. Ford Motor Co.*, 529 F.2d at 269–70. Nevertheless, we have examined the Missouri decisions on breach by anticipatory repudiation and the elements of an action therefor, and we conclude that Instruction No. 7 is an accurate statement of the applicable law. *See Biggers v. Gonter*, 54 S.W.2d 783, 785 (Mo.Ct.App.1932); *Armstrong v. Dunn*, 163 Mo.App. 701, 147 S.W. 509 (1912); *cf. Quivirian Development Co. v. Poteet*, 268 F.2d 433, 439–40 (8th Cir. 1959) (holding that Missouri courts would adopt general requirement that plaintiff show ability "to have made performance of his obligation").

■ The Avrens' third ground for objection to the instruction is, in form, similar to

the first two. In reality, however, the third ground challenges the sufficiency of the evidence that Iowa-Mo would have been able to perform its part of the contract. Although defendants did not raise this issue at the instructions conference, their position was adequately presented to the district court by their motions for directed verdict at the close of plaintiff's evidence and again at the close of all the evidence, and by their motion for judgment n. o. v. The question was therefore preserved for appeal. Accordingly, we have carefully read the transcript of the trial, and we conclude there was sufficient evidence to warrant submission of the issue to the jury.

The main conditions which the Avrens claim Iowa-Mo would have been unable to meet relate to the transfer of title to the quality specified and the providing of title insurance. The Avrens also assert that Iowa-Mo had to prove that the Avrens' assumption of the first mortgage would have been approved by the mortgagee by closing time. On September 1, 1976 there were three liens on the Inn that Iowa-Mo would have to have removed in order to convey title as agreed: a $600,000.00 second mortgage and deed of trust held by Iowa-Des Moines National Bank, a $21,000.00 judgment lien, and a $14,000.00 prejudgment attachment lien. The president of Iowa-Mo, Mr. John Neiman, testified at trial that an arrangement had been made with Iowa-Des Moines National Bank, whereby the Bank would release its second mortgage and advance the funds necessary to clear any outstanding liens on the Inn on the day of closing. This testimony and the existence of some sort of arrangement were confirmed by the evidence that closing on the resale of the Inn, which also required conveyance free of the second mortgage, was accomplished in late October, 1976. Although the terms of the resale did include a payment of $100,000.00 cash by purchasers, this amount would not have been sufficient by itself to clear the $600,000.00 second mortgage.

On the matter of title insurance, Mr. Kenneth Babbit, a lawyer and title insurance agent in the Kimberling City area who had previously performed legal services for Iowa-Mo, testified at trial. He had prepared a preliminary insurance "binder" for the Avrens on August 20, 1976, listing all liens and restrictions on the title at that time, and stated that it was customary for the final insurance commitment to be provided at the time of closing, after all liens and restrictions other than those specified in the contract had been removed. The closing of the Avren transaction had been scheduled to take place at the offices of Great Southern Savings and Loan Association, the holder of the first mortgage, in Springfield, Missouri, a short distance from Mr. Babbit's office. Thus, the evidence that Iowa-Mo would have been able to provide the necessary title insurance was clearly sufficient.

The Avrens' assumption of the first mortgage on the Inn required the written approval of Great Southern (GS), which in turn depended on a satisfactory credit report on the Avrens. On August 26, 1976 the Avrens provided GS with the requested financial information. Richard Huff, the vice president of GS, testified that the GS officers saw no reason not to allow the assumption, but that a favorable credit report, dated September 1, 1976, was not actually received by mail until September 2 or 3. Mr. Huff also stated, however, that when circumstances required, the necessary report could be obtained from the credit bureau by telephone or by special courier. The evidence that GS could and would have approved the mortgage assumption on September 1, if requested to do so by the parties, was certainly sufficient to go to the jury.[4]

---

4. Defendants also argued that the contract required Iowa-Mo to prepare before closing a list of accounts receivable and an inventory of food, furnishings, equipment, and supplies, to be purchased by the Avrens at a price to be agreed upon. Iowa-Mo considered this provision to be relatively unimportant, and partly because the Avrens' breach preceded any agreement on price, plaintiff did not include this item in its calculation of damages. Nevertheless, the testimony of Neiman and Robert Shelton, manager of the Kimberling Inn, pro-

In general, over the course of an eight-day trial, the district court allowed defendants to dispute plaintiff's ability to perform on *every* contractual obligation undertaken by plaintiff (except on the grounds that Iowa-Mo had forfeited its certificate to do business in Missouri). That the jury credited plaintiff's evidence rather than defendants' does not, in this case, constitute a ground for reversal.

*Measure of Damages.*

■ The Avrens' third argument for reversal is that the district court erred in charging the jury on the measure of damages. Instruction No. 8 read as follows:

> If you find the issues in favor of the plaintiff . . . on plaintiff's claim for damages, then the measure of damages for the breach of the contract is the difference between the contract price and the value of the Kimberling Inn properties on the day that the contract should have been completed, plus any other damages sustained by plaintiff as a direct result of the defendants' failure to purchase the Kimberling Inn properties, less the amount of the earnest money paid by defendants.

The Avrens claim this instruction required the jury to base its computation of damages on figures as to which no evidence, or only vague and insufficient evidence, was adduced at trial.

The transcript shows that defendants did not object to this charge at the instructions conference,[5] and therefore this instruction will be reviewed only for plain error. We find that Instruction No. 8 accurately states Missouri law on the measure of a vendor's damages for the purchaser's breach of land sales contract, *see, e. g., Construction Enterprises, Inc. v. Schaeffer*, 562 S.W.2d 799, 800 (Mo.Ct.App.1978); *Duncan v. Town-*

send, 325 S.W.2d 67 (Mo.Ct.App.1959); *Biggers v. Gonter*, 54 S.W.2d 783, 786 (Mo.Ct.App.1932); *Norris v. Letchworth*, 167 Mo.App. 553, 152 S.W. 421, 421–22 (1912); *see generally* 3 American Law of Property § 11.67(b) (A. J. Casner ed. 1952), and does not require the jury to go beyond the evidence presented at trial. The court did not err by giving Instruction No. 8. Indeed, the insufficiency of the evidence complained of by appellants was, in fact, a conflict in the evidence, perfectly suited for resolution by jury.

*Other Evidentiary Rulings.*

The Avrens' last argument for reversal is that allegedly erroneous evidentiary rulings, ten of which are specifically cited in their briefs, prejudiced defendants in the trial of the case. Federal Rule of Evidence 103(a) requires that such a ruling has affected a "substantial right" of the complaining party before error may be predicated thereon. Similarly, Federal Rule of Civil Procedure 61 provides that a judgment may not be disturbed for reason of an error that is not "inconsistent with substantial justice" and "does not affect the substantial rights of the parties."

We have examined the alleged errors in the context of the whole trial, and we briefly summarize our findings. Most of the rulings could not conceivably have resulted in prejudice to the Avrens, for the simple reason that the evidence offered or objected to by defendants was either tangential to the main issues in the case or was admitted without objection at another point in the trial. Other of appellants' objections are frivolous or challenge rulings that were clearly correct. One of the Avrens' arguments merely restates their contention that they should have been allowed to prove that Iowa-Mo was not licensed to do business in

---

vided evidence that the lists had been or would have been compiled by the time of closing.

**5.** At oral argument in this court, defendants' counsel insisted that he had objected to Instruction No. 8 at the instructions conference and that his objection must have been made during one of the numerous discussions the district court conducted "off the record."

Plaintiff's counsel has replied that the objection which defendants' counsel recalls was actually made at an earlier meeting between the parties, not at the instructions conference. Our own examination of the transcript shows that no off-the-record discussion was held at the point in the proceedings where one would expect any objection to Instruction No. 8 to be made.

Missouri. Finally, an unguarded remark of the trial judge upon sustaining one of defendants' objections was agreed by defendants' counsel to be adequately taken care of by a curative general instruction.

In short, the evidentiary rulings challenged by appellants did not affect appellants' substantial rights and are not grounds for reversal.

### IOWA–MO'S CROSS–APPEAL

On its cross-appeal, Iowa-Mo contends that given the jury's determination of the question of liability, the undisputed evidence of damages presented at trial would not support a verdict of less than $122,-500.00. Iowa-Mo requests that this court reverse the district court's denial of its post-trial motions and remand with instructions either to enter a judgment for $122,500.00 or to grant a new trial on the issue of damages.

Iowa-Mo's argument on appeal is based on the measure of damages stated in Instruction No. 8, see p. 14 supra. To determine the contract price of the Inn, Iowa-Mo adds the amount of the mortgage which the Avrens were to assume—$727,500.00—and the value of the Edwardsville property. Because several possible values of this property were given at trial,[6] Iowa-Mo takes the figure most favorable to the Avrens—$215,-000.00—and arrives at a contract price of $942,500.00. Iowa-Mo next asserts that the only evidence of the value of the Kimberling Inn on the day set for performance was the price obtained on resale, a few weeks after the Avrens' repudiation. This price was $100,000.00 cash plus assumption of the mortgage of $720,000.00, or a total of $820,-000.00.[7] Taking this sum as the market value of the Inn on September 1, 1976, and subtracting it from the contract price of $942,500.00, Iowa-Mo obtains the figure of $122,500.00. Iowa-Mo concludes that Instruction No. 8 required the jury to assess damages in at least this amount, even if the jury found plaintiff was not entitled to the $26,700.00 in special, or consequential, damages which it claimed.[8]

■ The flaw in this argument is that the resale price of the Inn was not the only evidence of its value on September 1. Obviously, the price which the Avrens agreed in mid-August to pay for conveyance of the Inn on September 1 was itself some evidence of the value of the Inn on that day. Cf. Cote v. Chesley, 577 F.2d 71, 73 n.3 (8th Cir. 1978) (where no evidence of market value was presented, trial court found identity of market and contract price at time of breach). Furthermore, on cross-examination of Iowa-Mo's president, defendants' counsel elicited testimony that in June of 1976, Iowa-Mo had received an offer to buy the Inn for $1,350,000.00. When asked to compare this offer with the purchase price agreed to by the Avrens later in the summer and with the subsequent resale price, the witness stated, "I suppose maybe you could say it [the Kimberling Inn] was going down the hill.... It apparently did go down in value." Thus, there was clearly a dispute over the Inn's value on the date of

6. In 1970, when Mrs. Avren inherited the property, it was valued at $285,000.00 for purposes of federal estate tax. During the negotiations with Iowa-Mo in August, 1976, Herman Avren represented the value of the parcel to be $300,-000.00. At about the same time, the realtor who managed the building for the Avrens stated that a "very reasonable estimate" of its market value was $275,000.00. After repudiating the contract with Iowa-Mo, the Avrens listed the Edwardsville property for sale for $290,-000.00, but authorized their realtor to accept an offer of $250,000.00 if more could not be obtained. In June, 1977 the Avrens sold the property for $215,000.00.

7. The evidence showed that the purchasers on the resale, unlike the Avrens, were obligated to pay an additional $50,000.00 realtor's commission. Thus, under Iowa-Mo's assumptions, the minimum recovery to which it claims to be entitled should, arguably, be reduced by $50,-000.00. Because, however, Iowa-Mo's argument is invalid for another reason, we assume for present purposes that the resale price of $820,000.00 was correctly calculated.

8. The claim of special damages, which was in large part uncontested at trial, comprised additional legal fees incurred in connection with the resale, and payments of taxes, principal and interest made after the Avrens' breach and before final closing on the resale.

breach, an essential element of the measure of damages and we are precluded from considering Iowa-Mo's request to increase its damage award to $122,500.00.

Indeed, it has been held that where the amount of damages was in dispute at trial, it would violate defendant's seventh amendment rights for either the trial court or appellate court to grant plaintiff's motion for an additional award of damages on the ground of inadequacy. *See, e. g., Novak v. Gramm*, 469 F.2d 430, 432–33 (8th Cir. 1972); *DePinto v. Provident Security Life Ins. Co.*, 323 F.2d 826, 837–38 (9th Cir. 1963), *cert. denied*, 376 U.S. 950, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964).

■ The other relief requested by Iowa-Mo is the grant of a new trial solely on the issue of damages. This court has held on many occasions that a district court's denial of a motion for new trial on the grounds of inadequacy or excessiveness of the jury verdict will be reviewed only to determine whether the damages award "constitutes 'plain injustice,' is 'monstrous,' [or] produced a 'shocking' result." *Handi Caddy, Inc. v. American Home Products Corp.*, 557 F.2d 136, 139–40 (8th Cir. 1977); *Novak v. Gramm*, 469 F.2d at 433–35; *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 448 (8th Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961). *See generally* 11 Wright & Miller § 2820 (1973). In the present case, Iowa-Mo originally sought damages of more than $247,000.00. This figure was based on the assumptions that the value of the Edwardsville property was $300,000.00 and that the value of the Kimberling Inn on September 1, 1976 was $820,-000.00, and that Iowa-Mo incurred special damages in excess of $47,000.00. By the time the case was submitted to the jury, conflicting evidence on the first two assumptions had been presented and the claim of special damages had been reduced to $26,700.00. If we assume, as we must, that the jury correctly followed Instruction No. 8 as to the subtraction of the $5,000.00 earnest money retained by Iowa-Mo, the actual assessment of Iowa-Mo's damages was $40,000.00. In view of the conflicting

evidence discussed above, we cannot say that the amount of damages awarded was "monstrous," "shocking," or "plainly unjust." Accordingly, Iowa-Mo's request for a new trial on the question of damages is denied.

The judgment of the district court is affirmed.