**Marjorie Louise DABNEY, Appellee,**

v.

**MONTGOMERY WARD & CO., INC., Appellant.**

**No. 82–1062.**

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1982.

Decided Aug. 18, 1982.

As Modified Sept. 9, 1982.

Rehearing and Rehearing En Banc Denied Oct. 19, 1982.

Bruce J. Schulte, Dailey, Ruther, Bauer, Schulte & Hahn, Burlington, Iowa, for appellee.

Michael W. Liebbe, Celeste F. Bremer, Raben, Liebbe, Shinkle & Bremer, Davenport, Iowa, Kent A. Simmons, Iowa City, Iowa, for appellant.

Before HEANEY and ARNOLD, Circuit Judges, and REGAN *, Senior District Judge.

REGAN, Senior District Judge.

In this product liability case plaintiff recovered a judgment of $1,000,000 plus prejudgment interest for damages she sustained as the result of serious burn injuries caused by a fire in her rented duplex apartment on October 15, 1977. Defendant appeals from the denial of its post-judgment motions. We reverse and remand.

The principal issue on appeal is whether the district court [1] abused its discretion by denying defendant's motion for a new trial based on the ground the Court had erred in refusing leave to defendant to produce a witness who had not been listed but whose existence and relevant testimony first came to defendant's knowledge two hours before leave was requested on the morning the trial had been scheduled to commence.

It was plaintiff's trial theory [2] that a space heater sold by Montgomery Ward to the owner of the duplex, and which had been installed in 1964 (some thirteen years earlier) in the wall between the kitchen and living room for heating the small one bedroom apartment was defectively designed, in that the flame at the burner "licked" out into the outer chamber of the heater instead of being confined inside the heat exchangers, with the result, in the opinion of plaintiff's experts, that the flames had ignited small dust or lint particles which were then carried by air currents to the "point of origin" of the fire.

Defendant contended that the more likely cause of the fire was a lighted cigarette dropped by plaintiff at or before the time she fell asleep on the living room couch under the influence of alcohol. The testimony which defendant was precluded from adducing was probative of this theory.

Plaintiff had moved into the apartment in February, 1975. She had had no problems with the space heater prior to the fire. For that matter there is no evidence of any problem with the space heater which had been experienced by anyone from the date of its 1964 installation to the time plaintiff's expert witnesses examined it in 1980.

This suit was filed October 12, 1979, just three days before limitations would have run. So far as appears from the record, this was the first notice Montgomery Ward had of the fire or of plaintiff's claim that its space heater installed in 1964 had caused the 1977 fire. Under the circumstances, the difficulties which confronted defendant in investigating plaintiff's responsibility for the fire two or more years after the event are manifest.

Basically, defendant had little more than the reports of the Fire Marshall and other members of the fire department which concluded that the cause of the fire was "probably" or "possibly" smoking. And clearly, the physical evidence as seen and examined by the fire department personnel, was consistent with the finding of a fire caused by careless smoking. Also supportive of this theory was evidence that plaintiff was a cigarette smoker, that unlighted cigarettes were found on the living room furniture, and that when plaintiff was examined in the hospital's emergency room there was an odor of alcohol on her breath.

Plaintiff testified unequivocally that she had worked for several months six days a week as the full time day bartender at a neighborhood tavern (North Hill Tap) owned by her steady "date" Jack Mercer (who did not testify); that on October 15,

---

* John K. Regan, Senior District Judge, Eastern District of Missouri, sitting by designation.

1. The Honorable R. E. Longstaff, United States Magistrate of the United States District Court for the Southern District of Iowa.

2. Initially, plaintiff theorized that the heater's control valve which was manufactured by Honeywell, Inc. (an original co-defendant) was defective and malfunctioned, causing an improper flow of gas and delayed ignition within the heater. When tests by plaintiff's experts failed to find such a defect, Honeywell was dropped as a defendant, and the "dust-particle" theory was developed. In the opinion of defendant's experts the "dust particle" theory was "quite speculative" and "extremely improbable."

1977, just as on the other days of the week she had worked from 7 A.M. to at least 6 P.M.; that she never drank while at work, but that after her October 15th work day was over and before leaving the tavern she drank one beer in the company of her employer-friend, following which an unnamed couple, customers in the tavern, who were on their way out of town going in her direction, drove her home (she had missed the bus); that she had heard that the male of the couple, an itinerant construction worker, had since passed away, and that his wife was a complete stranger whom plaintiff had never seen before (and inferentially, since) that day; that after taking care of her dog's needs, she drank one other beer and smoked a cigarette in the kitchen, and then spoke on the telephone to her daughter and mother; that by that time she was utterly exhausted by her long working hours, so she put on her nightgown, eschewing her bed, and laid down on her living room sofa and promptly fell asleep. Plaintiff specifically denied ever smoking in the living room except on very rare occasions, of which the evening of October 15, 1977 was not one.

With respect to the occurrence itself, plaintiff testified that while half asleep she heard a loud noise and, without knowing why, she groped her way first to the front door, which she could not open, and then to the clothes closet (where she was later found by the firemen). She disclaimed any knowledge of flames, heat or smoke in the living room or that a fire had been or was in progress,[3] and testified that she didn't even realize she had been burned about her face and body, although she experienced pain in her hands.

The evidence which defendant sought to adduce through Ms. Gerry Ballard, the newly discovered witness, was clearly relevant (as the magistrate held), not only as circumstantial evidence supportive of defendant's theory, but also as tending in several important respects to refute plaintiff's testimony.

Thus, Ms. Ballard placed plaintiff at about 4:30 p. m. in another tavern (Hilltop Inn) where Ms. Ballard was a bartender, this being more than an hour and a half before plaintiff testified that she had left her place of employment. So, too, Ms. Ballard asserted that plaintiff was then in an intoxicated condition, so much so that while smoking, plaintiff was unable to consistently "hit" the ashtray with the ashes from her cigarettes, with the result that Ms. Ballard was compelled to repeatedly wipe up the area in front of plaintiff's seat. And finally, according to Ms. Ballard, a Mr. and Mrs. Carl Bono, regular patrons of Hilltop Inn, with whom plaintiff was conversing, introduced Ms. Ballard to plaintiff on the occasion in question, and it was the Bonos who left the tavern with plaintiff. On the following day, Ms. Ballard became aware that plaintiff (whom she had never previously met) had been injured in the fire.

In our consideration of this appeal we start with the premise that "a district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the Court's pre-trial order, and such a ruling will be reversed on appeal only for abuse of discretion." *Iowa-Mo. Enterprises, Inc. v. Avren,* 639 F.2d 443, 447 (8 Cir. 1981); *Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 897–98, (8 Cir. 1978). In the usual situation in which the district court was held not to have abused its discretion in excluding the testimony of a witness who was not listed or otherwise timely identified (e.g. *Case v. Abrams,* 352 F.2d 193, 196 (10 Cir. 1965)), "(t)he witness was not newly discovered, nor was the nature of his testimony first disclosed after the pre-trial order." No such situation is here present.

In the instant case, the existence of an apparently disinterested witness, Gerry Ballard, and the nature of the testimony she was expected to give was in fact newly discovered. Defendant had no basis (years after the event) to question the statement

---

3. Contrariwise, her doctor testified that the "basic history" given to him by plaintiff when she was questioned at the time of her admis-sion to the hospital was "essentially" the statement that "she awoke to find a room in flames and herself and her clothing on fire."

of plaintiff as testified to in her discovery deposition that she had worked until after 6 P.M. without imbibing any alcoholic beverages, nor her further testimony that an unnamed couple had driven her from her place of employment at North Hill Tap because it was too late to go by public transportation. So, too, there was no known or available witness who could dispute the testimony of plaintiff as well as that of her daughter and mother that plaintiff was a very careful smoker at all times and that she was not intoxicated on the fateful evening of October 15, 1977.

The relevance and materiality of the testimony of Ms. Ballard is obvious. It could well have produced a different result had the jury been permitted to hear it, particularly in light of the "speculative" explanation of the cause of the fire as given by plaintiff's expert witnesses. The sole ground upon which the magistrate refused to permit defendant to amend its witness list as requested shortly before jury selection was to commence and to allow the proffered testimony was that the request was "untimely", in that it would be "grossly unfair" to plaintiff *"no matter what the reason"* for defendant's late discovery of the witness. Defendant's diligence in discovering the witness was not then questioned by the magistrate nor, for that matter, by the plaintiff.

Defendant's offer to make its newly discovered witness available for deposition at the courthouse was ignored. Instead, the primary ground of plaintiff's objection that she would be prejudiced if the requested amendment of its witness list were allowed was that the late disclosure of the witness deprived her counsel of an opportunity "to interview *other* witnesses with whom plaintiff may have been associating before she went to her home." Amplifying this objection plaintiff's counsel argued that the *three* members of the firm representing plaintiff who were in court "are the only ones really in the office who have any specific and general knowledge of the case, and *we* will have absolutely no opportunity to build up the number of witnesses that we feel would be available in the event that the testimony is allowed."

It would appear, in light of plaintiff's sworn insistence that she was in North Hill Tap continuously until after 6 P.M. (and therefore could not have been in Hilltop Inn) when she left for home, the principal witness who could have corroborated her would have been Jack Mercer (whose failure to testify is not explained of record). Any patron of the tavern who could remember (four years after the event) when and how plaintiff left that evening, would, if available, be known either to plaintiff or to Mercer. So, too, we are not advised of any reason why either one of the three attorneys who were at the trial or any other associate of (or investigator for) the law firm could not have interviewed any witness who conceivably might have knowledge supportive of plaintiff's testimony. We note that the trial of this case extended over a period of more than a week.

■ We do not underestimate the importance of requiring timely compliance with pre-trial orders. On the other hand, a trial court should not adhere blindly to the letter of the order "no matter what the reason" for a party's non-compliance. We note that the magistrate expressly exonerated defendant from any implication of bad faith in failing to "timely" list the witness and found that such failure was not a trial tactic. Cf. *De Marines v. KLM Royal Dutch Airlines*, 580 F.2d 1192 (3 Cir. 1978).

■ On the premise of the magistrate's ruling, a party could never obtain a new trial on the ground of post-trial newly discovered evidence either under Rule 59 or under Rule 60(b)(2), FRCP. Granted that "a motion for new trial on the ground of newly discovered evidence is viewed with disfavor" (*Edgar v. Finley*, 312 F.2d 533, 536 (8 Cir. 1963)), a denial of such a motion is nevertheless reversible if the trial court abused its discretion. In the present case, the new evidence was discovered *before* the trial commenced, so that the time and expense of a new trial could have been avoided had the evidence been allowed or a con-

tinuance been granted had plaintiff requested one.[4]

■ As appears supra, we have concluded that under the circumstances of this case, the court abused its discretion in denying defendant's request to amend its witness list by adding the name of Gerry Ballard and in refusing thereafter to grant defendant a new trial.[5]

Reversed and remanded for a new trial.

4. Plaintiff argues that the failure of *defendant* to request a continuance upon learning of the new witness precludes it from asserting error. Plaintiff is mistaken. Defendant had no reason and was under no duty to move for a continuance. On the other hand, if plaintiff deemed that additional time was necessary for her to investigate the facts, defendant may not be faulted by reason of *plaintiff's* failure to request a continuance.

5. In connection with its motion for a new trial, defendant has submitted additional evidence newly discovered after the trial, testimony of Ronald V. Rourke, the divorced husband of plaintiff's daughter, who sought out defendant's counsel and swore generally and specifically that plaintiff had an alcohol problem and was a careless smoker. He further swore that on the night the fire occurred his then wife informed him that plaintiff had been drinking and was sent home by Mercer for that reason. His testimony, if believed by the jury, would be corroborative of that of Ms. Ballard. Admittedly, there was "bad blood" between Rourke and his former wife. However, we need not determine whether this evidence, of itself, would warrant a new trial.