**Jeffrey T. JOCHIMS, Plaintiff,**

v.

**ISUZU MOTORS, LTD., Defendant.**

No. 3–89–CV–70109.

United States District Court,
S.D. Iowa,
Davenport Division.

Nov. 12, 1992.

Steven J. Crowley and Darwin Bunger of the Crowley Law Firm, Burlington, Iowa, for plaintiff.

John McShane and Mary E. Bolkcom of Bowman & Brooke, Minneapolis, Minn., for defendant.

## ORDER

BENNETT, United States Magistrate Judge.

This litigation raises the all too frequent and vexatious problem of a party designating expert witnesses beyond the deadline imposed in a scheduling order pursuant to Federal Rule of Civil Procedure 16(b) & (e) and the inevitable disruption such an untimely request imposes on the litigation and the trial court's case management responsibilities. Additionally, the question of appropriate sanctions for a party's disregard of the pretrial scheduling order is at issue.

# I. INTRODUCTION AND BACK-GROUND.

This is a products liability suit in which Plaintiff Jeffrey T. Jochims ("Jochims") alleges that a 1986 Isuzu Trooper II motor vehicle rolled over causing Jochims severe injury. This is not the first time in this litigation the parties have been engaged in discovery disputes before this court. *See e.g., Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493 (S.D.Iowa 1992). If prior conduct is any indication of future actions, this will not be the last time.

As a result of a court imposed scheduling order, discovery closed in this case on May 1, 1992. By stipulation of the parties and by order of this court, the deadline for expert witness depositions was extended to May 31, 1992. On May 22, 1992, this court entered an order allowing for specific discovery directed to General Motors Corporation in the United States District Court for the Eastern District of Michigan. No further extensions of discovery were requested by the parties or authorized by this court.

On October 8, 1992, Jochims served Defendant Isuzu Motors, Ltd., ("Isuzu") with a supplemental answer to Defendant's interrogatory No. 1. This supplemental answer, for the first time, identified Dr. Michael Kaplan of Mechanical Systems Analysis, Inc. of Littleton, Colorado, and Mr. Robert Hooker of Eliseco Systems, Englewood, Colorado, as expert witnesses on Jochims' behalf. In the supplemental answer to interrogatory, Jochims indicated that Dr. Kaplan would testify, *inter alia,* "that due to its design, the Isuzu Trooper II is unnecessarily unstable and prone to rollover, particularly in the type of maneuver made by Jeffrey Jochims." Plaintiff's Supplemental Answer to Defendant's Interrogatory No. 1 at 3. Dr. Kaplan's testimony would be based in part on actual tests conducted on Jochims' Isuzu Trooper II. Mr. Hooker, the test driver who conducted stability and handling tests of the vehicle Jochims was driving at the time of the accident.

In response to this supplemental designation of Dr. Kaplan and Mr. Hooker, Isuzu filed a *Motion to Strike Plaintiff's Untimely*

and Unauthorized Designation of Expert Witnesses and brief in support thereof on October 30, 1992. Plaintiff's Resistance to IML's Motion to Strike Expert Witnesses and For Sanctions was filed November 3, 1992, and Plaintiff's Memorandum of Law in Support of Resistance filed November 4, 1992. A telephonic hearing was held on this matter on November 6, 1992. Steven J. Crowley and Darwin Bunger of the Crowley Law Firm, Burlington, Iowa, appeared on behalf of Jochims. Mary E. Bolkcom of Bowman & Brooke, Minneapolis, Minnesota, appeared on behalf of Isuzu.

Isuzu's Motion to Strike Plaintiff's Untimely and Unauthorized Designation of Expert Witnesses specifically:

asks the Court to strike plaintiff's untimely and unauthorized designation of two additional expert witnesses in this case. Isuzu brings this motion on the following grounds:

1. The discovery period has passed and plaintiff has shown no exceptional circumstances necessary to modify the Court's scheduling order; and

2. The opinions of the proposed additional expert witnesses are merely cumulative to the opinions already expounded by plaintiff's other experts.

Defendant's Motion to Strike Plaintiff's Untimely and Unauthorized Designation of Expert Witnesses at 1.

In response, Jochims argues that the court previously continued the June 22, 1992, trial date to February, 1993, to allow Isuzu to conduct further expert discovery and testing. This testing includes handling and steering tests using an exemplar 1986 Isuzu Trooper II by Isuzu's retained liability experts, Failure Analysis Associates, Inc. ("FAA") of Phoenix, Arizona. The continuance of the June trial date was also prompted by Isuzu's need to review the validation of Jochims' "Light Vehicle Dynamics Simulation (LVDS)" computer program, provides much of the basis for the conclusions of Jochims' primary liability expert, Dr. Andrezej Nalecz. Finally, Jochims asserts that "[n]ot until May 12, 1992, did Jochims discover that FAA had done actual vehicle tests on an exemplar vehicle, collected data from those tests and then run computer simulations with the LVDS program provided by Dr. Nalecz." Plaintiff's Memorandum of Law in Support of Resistance to IML's Motion to Exclude Expert Witnesses at 3. Jochims discovers this during the May 12, 1992, deposition of Dr. Cooperrider of FAA who "testified in the first half of his deposition that he believes the actual vehicle tests invalidate the findings and conclusions of Dr. Andrezej Nalecz." *Id.* Due to scheduling problems, Dr. Cooperrider's deposition, which started on May 12, 1992, was not completed until October 9, 1992. As of the filing of Jochims' resistance on November 3, 1992, Dr. Cooperrider had not responded to all of Jochims' requests for production of documents arising out of his deposition.

## II. APPLICABLE LEGAL STANDARDS AND ANALYSIS.

■ This court has considerable discretion in determining whether or not to allow Jochims to disclose expert witnesses after the deadline for doing so. The United States Court of Appeals for the Eighth Circuit has held that "we start with the premise that 'a district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the Court's pretrial order, and such a ruling will be reversed on appeal only for an abuse of discretion.'" *Dabney v. Montgomery Ward & Co., Inc.,* 692 F.2d 49, 51 (8th Cir.1982) (citing *Iowa–Mo. Enter., Inc. v. Avren,* 639 F.2d 443, 447 (8th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983) and *Admiral Theatre Corp. v. Douglas Theatre Corp.,* 585 F.2d 877, 897–98 (8th Cir.1978)). The court went on to observe that "[w]e do not underestimate the importance of requiring timely compliance with pre-trial orders. On the other hand, a trial court should not adhere blindly to the letter of the order 'no matter what the reason' for a party's non-compliance." *Dabney,* 692 F.2d at 52. The court went on to conclude that the trial court committed reversible error by failing to allow the newly discovered witness to testify. *Id.* at 52–53.

Following *Dabney*, the United States Court of Appeals for the Eighth Circuit decided *Patterson v. F.W. Woolworth Co.*, 786 F.2d 874 (8th Cir.1986). In *Patterson*, the court adopted four factors for the district court to consider in determining whether to exclude witnesses not disclosed in compliance with the pretrial orders. The court held:

> Flexible application of pretrial orders is within the sound discretion of the District Court. *Dabney v. Montgomery Ward & Co.*, 692 F.2d 49, 51 (8th Cir. 1982), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983). As the Fifth Circuit has noted, the factors that a district court should consider in deciding whether to exclude the testimony of a witness not made known in a manner complying with a pretrial order include the reason for failing to name the witness, the importance of the witness's testimony, the opposing party's need for time to prepare for the testimony and whether a continuance would be useful. *Murphy v. Magnolia Electric Power Association*, 639 F.2d 232 (5th Cir.1981) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2050, at 327 (1970)).

*Id.* at 879. *See also Bizzle v. McKesson Corp.*, 961 F.2d 719, 722 (8th Cir.1992) ("It is within the district court's discretion to exclude expert witnesses that have not been disclosed sufficiently in advance of trial"); *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 572 (8th Cir.1989) ("The district court is allowed wide discretion in determining the admission or refusal of expert testimony.") In *Tallarico*, the Eighth Circuit affirmed the district court's exclusion of Plaintiff's psychologist for failure to include the psychologist in the pretrial witness list and because "permitting plaintiff to call the psychologist as a witness would have prejudiced TWA." *Tallarico*, 881 F.2d at 572.

■ In order to determine whether Dr. Kaplan and Mr. Hooker should be excluded due to the untimely designation, the court will apply each of the four factors identified in *Patterson*. First, the court concludes that Jochims has a valid reason for the late disclosure of Dr. Michael Kaplan and Robert Hooker. Jochims did not learn until the deposition of Dr. Neil Cooperrider of FAA, in mid-May of 1992, that Isuzu had conducted extensive driving tests with an exemplar 1986 Trooper II. Nearly five months passed from the discovery of this information until the untimely naming of Jochims' experts, Dr. Michael Kaplan and Robert Hooker. Part of this delay was due to the time required to locate an expert witness who could conduct track testing of the actual 1986 Trooper II involved in this litigation, transport the vehicle to the test site, conduct preliminary tests and form preliminary opinions concerning the tests. While the court would have preferred earlier disclosure, given the highly specialized nature of the expert testimony in question, the court finds that Jochims acted in good faith and with reasonable diligence in obtaining Dr. Michael Kaplan and Robert Hooker as expert witnesses.

Turning to the second factor identified in *Patterson*, the court concludes that the testimony of Dr. Kaplan and Mr. Hooker is critical to Jochims' case. Jochims' initial liability expert, who they also expect to rely on at trial, Dr. Andrzej Nalecz, conducted a computer simulation but did not do any actual testing of a 1986 Trooper II. In response to Dr. Nalecz, Isuzu retained Dr. Neil Cooperrider and FAA to conduct extensive tests with an exemplar 1986 Trooper II. Jochims asserts and the court agrees that the testimony of Dr. Kaplan and Mr. Hooker is necessary to adequately respond to the actual testing conducted by Dr. Cooperrider and FAA.

Applying the third factor identified in *Patterson*, Isuzu obviously needs some time to prepare for the testimony of Dr. Kaplan and Mr. Hooker. The court will allow a reasonable period of time for Isuzu to take the depositions of Dr. Kaplan and Mr. Hooker. While the court anticipates that Dr. Cooperrider and FAA can provide any rebuttal expert testimony necessary to respond to Dr. Kaplan and Mr. Hooker, Isuzu will be provided an opportunity to convince the court that additional expert testimony is necessary.

The fourth factor identified in *Patterson* is whether a continuance would be useful. At the hearing, both parties declined to request a continuance and strongly urged the court not to continue the matter.[1] The court believes a continuance is not necessary at this time. If, however, Isuzu can establish any prejudice from this court's allowing the untimely expert witness designation of Dr. Kaplan or Mr. Hooker, or if Jochims can establish prejudice from any future designated counter-experts by Isuzu, the matter of a continuance will be revisited.

Based upon the factors identified by the United States Court of Appeals for the Eighth Circuit in *Patterson*, this court concludes that Isuzu's Motion to Strike Plaintiff's Untimely and Unauthorized Designation of Expert Witnesses should be and is denied.

## III. THE APPLICABILITY AND APPROPRIATENESS OF FEDERAL RULE OF CIVIL PROCEDURE 16(f) SANCTIONS FOR UNTIMELY DISCLOSURE OF EXPERT WITNESSES.

Isuzu forcefully argues in its brief and at oral argument that Jochims' untimely designation of Dr. Kaplan and Mr. Hooker is a serious breach of the scheduling order and of Federal Rule of Civil Procedure 16(b) & (e). Isuzu further asserts that Jochims should be sanctioned pursuant to Federal Rule of Civil Procedure 16(f).

Federal Rule of Civil Procedure 16(f) provides:

**Sanctions.** If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

In analyzing the question of whether or not Jochims should be sanctioned, the court draws a distinction between the factors set forth in *Patterson* which guide the court in its exercise of discretion to exclude late witnesses and Jochims' failure to promptly move for a modification of the scheduling order.

■ Before determining whether sanctions should be imposed pursuant to Rule 16(f), and if so, what sanctions would be appropriate, the court must determine whether Jochims' delay in moving to amend the scheduling order was substantially justified or whether other circumstances exist that would make an award of expenses unjust.[2]

1. In discussing the interplay between the exclusion of witnesses and granting a continuance, the United States Court of Appeals for the Fifth Circuit recently observed:
   we emphasize that our holding is not to be interpreted as meaning that exclusion of witnesses or evidence has supplanted continuance as the preferred means of dealing with a party's attempt to designate a witness out of time or offer new evidence. *See Conway v. Chemical Leaman Tank Lines, Inc.,* 687 F.2d 108, 112 (5th Cir.1982); *F & S Offshore, Inc. v. K.O. Steel Casting, Inc.,* 662 F.2d 1104, 1107–08 (5th Cir.1981); *Shelak v. White Motor Co.,* 581 F.2d 1155, 1159–60 (5th Cir.1978). Coupled with appropriate sanctions, a continuance will serve the court's truth-seeking function while still allowing it to punish and deter conduct that is in violation of the rules. Moreover, it remains the province of the district court to determine, within the bounds of discretion, whether any sanctions are appropriate.
   *Bradley v. United States,* 866 F.2d 120, 127 n. 12 (5th Cir.1989).

2. Sanctions under Federal Rule of Civil Procedure 16(f) are appropriate where the lawyers' and parties' conduct unreasonably delays or otherwise interferes with the expeditious management of trial preparation. In *Matter of Sanction of Baker,* 744 F.2d 1438, 1440–41 (10th Cir.1984), the court observed that:

There is little case law discussing the term "substantially justified" in Rule 16(f). This term also appears in Federal Rule of Civil Procedure 37(a)(4) which provides in relevant part that:

> If the motion [to compel] is granted, the court shall ... require the party ... whose conduct necessitated the motion ... to pay ... the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was *substantially justified* or that other circumstances make an award of expenses unjust. (emphasis added).

Case law under Rule 37(a)(4) generally holds that an award of expenses is mandatory.[3] "A reading of the Rule leads to the inescapable conclusion that the award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery, ... 'unless the court finds the opposition to the motion was substantially justified....'" *Cal Dive Int'l, Inc. v. M/V Tzimin,* 127 F.R.D. 213, 217 (S.D.Ala.1989) (quoting *Merritt v. International Bhd. of Boilermakers,* 649 F.2d 1013, 1019 (5th Cir.1981)); *American Hangar, Inc. v. Basic Line, Inc.,* 105 F.R.D. 173, 176 (D.Mass.1985). "The greatest operative principle of Rule 37(a)(4) is that the loser pays." 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2288 (1970).

There is no bright line standard for "substantial justification," and courts must use discretion in determining whether a party's position is substantially justified. *Cuno, Inc. v. Pall Corp.,* 117 F.R.D. 506, 509 (E.D.N.Y.1987); *Alvarez v. Wallace,* 107 F.R.D. 658, 662 (W.D.Tex.1985). "Whether opposition to a motion to compel is substantially justified depends on the circumstances of the particular case." *Transcontinental Fertilizer Co. v. Samsung Co., Ltd.,* 108 F.R.D. 650, 653 (E.D.Pa.1985); *American Hangar,* 105 F.R.D. at 176 (citing 4A James W. Moore et al., *Moore's Federal Practice,* ¶ 37.02 (2d ed. 1992). However, courts have generally focused on "the quality of the justification and the genuineness of the dispute; where an impartial observer would agree that a party had good reason to withhold discovery," opposition is substantially justified. *Alvarez,* 107 F.R.D. at 662; *Cal Dive,* 127 F.R.D. at 217; *see American Hangar,* 105 F.R.D. at 176–77; *Transcontinental Fertilizer,* 108 F.R.D. at 653.[4]

The Supreme Court in *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), established the meaning of "substantially justified" within the context of the Equal Access to Justice Act. In its analysis, the Court recognized the meaning that lower courts have attached to "substantially justified" in the context of

there can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16, indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, ... but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial ....
Certainly the sanctions concept contained in (f) is a codification of the purpose to insist that the court, the lawyers and the parties abandon habits which unreasonably delay and otherwise interfere with the expeditious management of trial preparation.

3. The advisory committee notes to Rule 37(a)(4) provide that "expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to the court ... or ... other circumstances make an award of expenses unjust." Fed.R.Civ.P.

37(a)(4) advisory committee notes on 1970 amendments.

4. The "genuine dispute" language many courts have focused on is outlined in the Advisory Committee's Notes on 1970 Amendments to Federal Rule of Civil Procedure 37(a)(4), which provides in relevant part:
"On many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine issue exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests or objections to discovery."
(quoting Fed.R.Civ.P. 37(a)(4) advisory committee's note on 1970 amendment).

Rule 37(a)(4) and (b)(2)(E). The Court stated that under Rule 37, "[substantially justified] has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' ... or 'if reasonable people could differ as to [the appropriateness of the contested action]....' " *Id.* at 565, 108 S.Ct. at 2550 (quoting *Reygo Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir.1982)) (citations omitted).

■ The court concludes that Jochims did not promptly move for a modification of the scheduling order within a reasonable time following the disclosure of the FAA vehicle exemplar testing in mid-May, 1992. Jochims' failure to do so is not substantially justified. Indeed, it was not until after Isuzu filed its Motion to Strike Plaintiff's Untimely and Unauthorized Designation of Expert Witnesses on October 30, 1992, that Jochims moved to amend the scheduling order. Jochims should have promptly moved to amend the scheduling order while engaging in the search which ultimately led to Dr. Kaplan and Mr. Hooker. Had Jochims timely moved to amend the scheduling order, the court could have imposed reasonable deadlines for obtaining additional experts and avoided any of the case management problems raised by Jochims' October 8, 1992, supplement to Isuzu's expert witness interrogatory.

A magistrate judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me.1985). Scheduling orders have become increasingly critical to the district court's case management responsibilities because "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." *Id.*

The court in *Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir.1990) also observed that the flouting of discovery deadlines causes substantial harm to the judicial system. The court stated:

[d]elays in litigation are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

*Id.* at 792.

The court concludes that Jochims' delay in seeking to amend the scheduling order was not substantially justified and that other circumstances do not exist that would make sanctions unjust or inappropriate. The court determines that an appropriate sanction for Jochims' disregard of the scheduling order is to require Jochims to pay the expert witness fees of Dr. Kaplan and Mr. Hooker which would normally be incurred by Isuzu pursuant to Federal Rule of Civil Procedure 26(b)(4)(A)(ii) and (C). Isuzu shall not be required to pay Dr. Kaplan and Mr. Hooker for their deposition testimony.[5] Isuzu shall be liable for its own attorney fees, expenses and costs in connection with the depositions of Dr. Kaplan and Mr. Hooker.

A telephonic hearing will be held Monday, November 16, 1992, at 4:00 p.m. to set a deposition schedule and to address the other scheduling question raised by Plaintiff's Motion to Amend Scheduling Order filed November 5, 1992. Plaintiff's counsel shall be responsible for initiating the conference call. The court may be contacted at 515/284–6217.

IT IS SO ORDERED.

---

5. Even if Jochims motion to amend the scheduling order had been timely, the depositions of Dr. Kaplan and Mr. Hooker would have inevitably been taken by Isuzu. Thus, it could be argued that it is now unfair to shift the costs of the experts from Isuzu to Jochims. The court determines that the sanction imposed here is more equitable under all the circumstances than any of the other sanctions referred to in Federal Rule of Civil Procedure 16(f).