**David Michael TOMLIN, Plaintiff,**

v.

**Frank C. HOLECEK, et al., Defendants.**

**BE & K ENGINEERING COMPANY and BE & K Construction Company, Third–Party Plaintiffs,**

v.

**ASSET PROTECTION TEAM, INC., a subsidiary of Vance International, Inc., Third–Party Defendant.**

**Civ. No. 5–91–113.**

United States District Court, D. Minnesota, Fifth Division.

July 28, 1994.

See also 150 F.R.D. 628.

---

Robert J. King, Jr., Minneapolis, MN, for plaintiff.

John D. Kelly and Cheryl M. Prince, Duluth, MN, for defendants.

ERICKSON, United States Magistrate Judge.

## I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiff's Motion for a Protective Order which would preclude the Defendants Boise Cascade Corporation, BE & K Engineering Company, and BE & K Construction Company ("the Defendants") from calling any expert witnesses to testify at the trial of this matter, or would condition such testimony on the award of sanctions.

A Hearing on the Motion was conducted on July 26, 1994, at which time the Plaintiff appeared by Robert J. King, Jr., Esq., and the Defendants appeared by John D. Kelly and Cheryl M. Prince, Esqs.

For reasons which follow, we deny the Motion to preclude the testimony of the experts who have been identified by the Defendants, and we defer the issue of sanctions.

## II. *Factual and Procedural Background*

By Order dated June 8, 1993, United States Magistrate Judge Patrick J. McNulty directed that, within 20 days of the date of the Order, the Plaintiff was to disclose the expert witnesses that he expected to call at trial, the facts and opinions to which the experts were expected to testify, and a summary of the grounds upon which the expert based his opinions.[1] The same Order continued in effect a previous Order of the Court which required the Defendants to "make proper disclosure of prospective expert witnesses * * * prior to August 31, 1993." There is no dispute that the Defendants failed to disclose their expert witnesses, and the underlying opinion testimony of those witnesses, prior to August 31, 1993.

Indeed, it was not until on or about May 25, 1994, that the Defendants served their expert disclosures which, in their entirety, listed the names and addresses of 11 prospective expert witnesses.[2] In response to these disclosures, counsel for the Plaintiff advised the Defendants, by letter dated June 1, 1994, that the disclosures were both untimely and inadequate. Thereafter, by letter dated July 1, 1994, the Defendants served Notices to take the depositions of Dr. Patricia Aletky[3] on August 4, 1994; of Dr. Joseph

---

1. Magistrate Judge McNulty's Order did not require the Plaintiff to file his expert disclosures with the Court, and our review of the Court's files fails to reveal when those disclosures were made, although counsel for the Plaintiff did advise, during the course of argument, that the Plaintiff's initial listing of proposed expert witnesses, which had identified 27 experts, had been substantially trimmed by a subsequent disclosure.

2. We note that, in his Order of June 8, 1993, Magistrate Judge McNulty determined that the

Plaintiff's generalized expert disclosures were insufficient and ruled that, "[i]f a prospective expert witness is expected to express an opinion, that opinion must be expressly disclosed, and the facts or other grounds for the opinion must be delineated." Clearly—and as to this the Defendants take no exception—their expert disclosures of May 25, 1994, were untimely *and* insufficient.

3. The Defendants assert that, "except for Dr. Aletky, all of the named medical experts were Plaintiff's own treating physicians." *Defendants'*

H. Wombell on August 8, 1994; and of Drs. Bernard Lublin and Daniel Owens on August 9, 1994. With the exception of Dr. Aletky, the depositions are scheduled to be taken in the State of Virginia, where each of the pertinent doctors resides.

By Motion filed on July 7, 1994, the Plaintiff opposed the taking of these depositions since the Defendants failed to disclose the identities and the expected opinions of these experts in accordance with the dictates of the Court's Scheduling Order of June 8, 1993. Thereafter, on July 13, 1994, the Defendants served an Amended Disclosure of Expert Witnesses, which differs from their expert disclosures of May 25, 1994, by naming two additional experts and by describing the anticipated testimony of their experts.

In support of their request for a Protective Order, the Plaintiff underscores that the Defendants' disclosures of May 25 were overdue by a full 9 months, and that they were woefully inadequate in that no more than the experts' names and addresses were recited. Accordingly, the Plaintiff requests the exclusion of this expert testimony at trial or, in the alternative, that the Plaintiff be awarded "all travel, lodging, and incidental expenses and attorney fees associated with the preparation for and the taking of depositions of defendant's [sic] witnesses," if the testimony is not excluded.

The Defendants respond by noting that, on May 4, 1994, they filed a Notice which memorialized their decision to substitute their current legal counsel for Mr. John J. Killen

("Killen"), who had represented them in these proceedings since the inception of their defense. In this respect, the Defendants contend as follows:

> On May 4, 1994, Hanft, Fride, et. [sic] al. was substituted as Defendants' counsel. For the first time, Defendants learned of the scheduling orders that had been entered and the disclosure deadlines that had been established. Prior to May 4, 1994, neither defendant was ever made aware that an expert disclosure deadline had been set or that such disclosure deadline had passed.

*Defendants' Memorandum,* at p. 2.

As corroboration for this argument, the Defendants filed the Affidavits of Guy G. Hurlbutt, Associate General Counsel in the Litigation Section of Boise Cascade Corporation's Litigation Department, and of Frederick E. Garrick, General Counsel of BE & K, Inc., which is the parent corporation of BE & K Engineering Company and BE & K Construction Company. Each of these Affiants avers to a belief that Killen was "zealously representing" their interests, and that neither had been informed of the expert disclosure deadline, that had been established by the Court's Scheduling Orders.

To test the veracity of these averments, the Plaintiff subpoenaed Killen to testify and, over the objection of the Defendants that any testimony from Killen would violate the Defendants' attorney-client privilege, Killen was permitted to testify.[4] Killen testified to his

---

Memorandum, at p. 5. Counsel for the Plaintiff advises that the Defendants are mistaken since at least some of the medical experts, who were identified by the Defendants, served as independent medical examiners for the workers' compensation insurer of the Plaintiff's employer. As to Dr. Aletky, she conducted an independent psychological examination of the Plaintiff at the insistence of certain of the other Defendants in this action, who have since settled with the Plaintiff and have been released. See *Tomlin v. Holecek,* 150 F.R.D. 628 (D.Minn.1993). The Defendants advise, and the Plaintiff does not contest, that the Plaintiff has had a copy of Dr. Aletky's psychological report since December 14, 1993.

4. The Court restricted the testimony of Killen to his response to the Affiants' contention that each was unawares of the expert disclosure deadline. Given the fact that the attorney-client privilege

can be expressly or implicitly waived by the client, we find no merit to the Defendants' position that they may disclose their assessment of Killen's communications with them, as a factual matter, but that Killen is estopped by the attorney-client privilege from contesting that assessment. As stated in *Swanson v. Domning,* 251 Minn. 110, 118, 86 N.W.2d 716, 722 (1957):

> The attorney-client privilege is personal to the client and may be waived. Where the client voluntarily testifies to statements alleged to have been made to an attorney or statements made by the attorney to the client, it must be held that the client has waived the privilege as to the things testified to by the client and cannot prevent the adverse party from calling the attorney as a witness to rebut or complete the conversation on that matter.

Such has been the law in the State of Minnesota for, at least, the last century. *State v. Madigan,*

belief, based upon his past practice, that a copy of the Scheduling Orders had been transmitted to the Defendants and that he had discussed the disclosure dates with each of them. Subsequent to the Hearing, with leave of the Court, Killen filed an Affidavit which advised that he could find no evidence in his correspondence, his pleadings file or in his time records, that documented his transmittal of the Scheduling Orders to the Defendants, or that verified his communication of the disclosure deadlines to his clients. Killen's Affidavit goes on to state: "However, inasmuch as I was in touch with them on a regular basis with respect to developments in this matter as well as in developments in the *ATCO* case [5] which was proceeding at the same time, I fully believe that I discussed these matters with each of them [i.e., representatives of the Defendants] although I have no present documentation."

The Defendants further relate that, because of the substantial volume of documents in this matter, their newly retained counsel were unable to responsibly prepare expert disclosures until on or about July 13, 1994. They note—and it is not seriously contested—that the experts they disclosed are not of recent origin, but have been long known to the Plaintiff either because of their inclusion in the prior disclosures of other Defendants in this matter, or because their depositions have been taken in the *ATCO* matter and, upon the agreement of the parties, could be used for discovery purposes in this matter.[6] With characteristic candor, counsel for the Plaintiff acknowledged that, with respect to the medical experts that the Defendants have named, it was unlikely that any of their testimony would come as a surprise to the Plaintiff's counsel. As for prejudice, Plaintiff's counsel noted that, approximately one

month ago, certain of the Plaintiff's experts were deposed, in order to preserve their testimony in lieu of a Court appearance, and that, consequently, it is the Plaintiff's paramount concern that the Defendants may use their tardiness and delay in identifying their experts, and their experts' opinions, in order to blindside the Plaintiff's case. The Defendants deny that any prejudice can befall the Plaintiff since the anticipated expert opinions have been known to the Plaintiff for a substantial period of time and, therefore, they will need no appreciable amount of time to prepare for the cross-examination of these experts.

### III. *Discussion*

A. *Standard of Review.* Obedience to the constraints of the Scheduling Orders of the Court is critical if the Court is to capably perform its case management responsibilities. *Jochims v. Isuzu Motors, Ltd.*, 144 F.R.D. 350, 356 (S.D.Iowa 1992), citing *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D.Me.1985). Accordingly, the "flouting of discovery deadlines causes substantial harm to the judicial system." *Id.* Nevertheless, blind adherence to the time constraints of a Scheduling Order, without a proper regard for the bases and effects of the non-compliance, may well be inconsistent with the dominant interest of a trial in ascertaining the truth. *Dabney v. Montgomery Ward & Co.*, 692 F.2d 49, 52 (8th Cir.1982), cert. denied, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983); *Bradley v. United States*, 866 F.2d 120, 127 n. 12 (5th Cir.1989).

■ Accordingly, our Court of Appeals has developed a flexible standard in order to preclude fundamental unfairness at the time of trial. *Boone v. Moore*, 980 F.2d 539, 541

66 Minn. 10, 68 N.W. 179 (1896) (client who attacks attorney waives attorney-client privilege so far as to allow attorney to defend himself).

**5.** The Defendants here, but not the Plaintiff, were involved in the matter of *ATCO Structures Incorporated v. Boise Cascade Corporation, BE & K Engineering Company, BE & K Construction Company, et al.*, Civ. No. 5–91–114, and certain of the issues there, paralleled those here. By stipulation of the parties in this proceeding, the discovery completed in the *ATCO* case could be utilized in this matter.

**6.** For understandable reasons, none of the discovery in the *ATCO* matter has been filed in this case and, as a consequence, we have no means of verifying the Defendants' assertion that the opinions of their non-medical experts have been thoroughly explored in those proceedings. We do understand that, despite their agreement to permit the use of the *ATCO* depositions as discovery in this matter, counsel for the Plaintiff were not involved in the *ATCO* case and did not conduct the discovery there.

(8th Cir.1992), citing *Wilson v. Beloit Corp.,* 921 F.2d 765, 768–69 (8th Cir.1990). In *Patterson v. F.W. Woolworth Co.,* 786 F.2d 874, 879 (8th Cir.1986), the Court enunciated the factors that the Court would consider in determining whether to exclude "the testimony of a witness not made known in a manner complying with a pretrial order." Those factors include:

> (1) the reason the party fails to name the witness; (2) the importance of the testimony; (3) the amount of time the opposing party needs to properly prepare for the testimony; and (4) whether a continuance would in some way be useful.

And see, *Citizens Bank v. Ford Motor Co.,* 16 F.3d 965, 966 (8th Cir.1994); *Boone v. Moore,* supra at 541–42.

We apply these criteria in analyzing the Defendants' admitted failure to timely disclose their expert witnesses and their anticipated expert testimony.

■ B. *Legal Analysis.* The Defendants offer no just cause for their failure to disclose their expert witnesses as directed by the Orders of this Court. To the extent that they claim ignorance and, therefore, innocence, we find the claim unpersuasive. In large measure, a party's conduct during the course of preparing for trial is delegated to the party's attorney. Were we to accept the Defendants' entreaty, that they should not be held accountable for their lack of awareness as to the Scheduling Orders of this Court, we would merely be inviting a failure of communication, between client and attorney, which would surrender our case management responsibilities to the unruly control of the litigants. This we are not about to do.

Nevertheless, we find no evidence in the record before us that the Defendants chose the path of non-disclosure as a tactical ploy. Killen believed that he informed the Defendants of the applicable disclosure deadlines, but his belief is not corroborated either by documentary confirmation or by the Defendants' acknowledgement. While speculative bases for the non-disclosure may abound, we find no evidence to support any inference other than that the Defendants' default in their expert disclosures was attributable to oversight, neglect or inadvertence.[7] In and of itself, such an explanation for untimely expert disclosures is insufficient to warrant an exclusion of the testimony of those experts who were so belatedly disclosed. *Citizens Bank v. Ford Motor Co.,* supra at 967 ("[R]ecord was devoid of any evidence which might indicate bad faith or intentional late disclosure * * *."); *Boone v. Moore,* supra at 542. We, therefore, turn to the second element of our analysis.

The Defendants assert that the testimony of these experts is critical to their defense against the Plaintiff's claims as to both liability and damages. The Plaintiff does not seriously contradict this contention, but maintains that the Defendants' opportunity to present such evidence will, necessarily, result in increased effort and expenses on the part of Plaintiff's counsel. Undeniably, the Plaintiff's argument rings true. Were we to exclude the Defendants' expert testimony, the burden in prosecuting the Plaintiff's claims would be substantially diminished, but so would be the intensity of the Court's "truth seeking function." *Bradley v. United States,* supra at 127 n. 12. We do not believe that subservience to a Scheduling Order of this Court should overshadow our fundamental obligation to ascertain the truth, at least in the absence of grave prejudice to the compliant party.

As a third consideration, we look to the amount of time that the opposing party would need in order to properly prepare to address the belatedly disclosed expert testi-

---

7. Killen did testify to certain discussions he had held with representatives of the Defendants about the retention of expert witnesses which, he felt, would dovetail into a discussion of the deadlines by which expert disclosures must be made. Nevertheless, a party's decision to independently retain an expert, or to rely upon the experts retained by other parties, has an attenuated relationship, at best, to the date upon which those experts must be disclosed.

To the extent that counsel for the Plaintiff was interested in questioning Killen as to why the expert disclosures were not made, we conclude, as we did at the time of the Hearing, that such an inquiry would violate those aspects of the Defendants' attorney-client privilege, which they had not, either expressly or implicitly, waived.

mony. Under the totality of the circumstances before us, we are persuaded that an onerous burden will not befall the Plaintiff if the noted depositions are permitted to proceed. The Defendants do not seek leave to discover expert opinions not previously voiced, but endeavor to secure the opinion testimony of experts whose views have long been known to the Plaintiff's counsel. The distinction, in our view, is compelling. Given the professionalism of the attorneys, who have represented each of the parties as this case has progressed toward trial, we would doubt that Plaintiff's counsel have been benignly indifferent to any expert opinions that conflict with those the Plaintiff intends to present at trial, in preparing the testimony of the Plaintiff's own experts. As a consequence, we think it unlikely that counsel for the Plaintiff will have an inordinate burden in preparing to cross-examine the experts which the Defendants have now disclosed, given counsel's awareness of the substance of that opinion testimony for, at least, the last several months, if not years.

Nevertheless, we are not insensitive to the Plaintiff's foreboding premonition that, if the Defendants may now obtain the opinion testimony of the experts they have now disclosed, their belatedness in disclosure will, necessarily, inure to the Defendants' benefit, since much of the Plaintiff's expert testimony is "in the can"—it has already been preserved for trial. If the Defendants were now to be inventive and—armed with their knowledge of the testimony of the Plaintiff's experts—if the Defendants were to develop new trial strategies, undergirded by recently formulated expert opinion, then the Plaintiff would be subjected to the additional expense of securing rebuttal testimony from witnesses who are far distant from the trial of this matter, and whose testimony would have to be preserved by additional depositions. As a practical reality, the Plaintiff's concern is not without historical precedent in the chronicles of trial practice.

On the other hand, the Defendants emphasize that, unlike the Plaintiff, their medical testimony is dated, is preserved in medical reports and records, and is not susceptible to innovative reconstruction at this late date.

They also stress that their non-medical experts have been, by and large, deposed and that, as a consequence, those witnesses may diverge from their prior recorded testimony only at the peril of impeachment. Notwithstanding the cogent arguments of the parties, however, we need not resolve these issues here, for the future will disclose whether prejudice, appreciable or not, will beset the Plaintiff if the noted depositions go forward. As we subsequently discuss, we will await the results of the unfolding events at the noted depositions—since we presently find an insufficient showing of prejudice to the Plaintiff as would, at this point, preclude the depositions and the expert testimony which the Defendants have now identified.

As to the final factor in our analysis, we find no reason—at least at this stage—to favorably consider any request for a continuance of the trial date. While agreeable to the Defendants, the Plaintiff has made no request for a reprieve from the current trial date of October 3, 1994. Accordingly, we do not presently believe that the opinion evidence that the Defendants seek to secure will necessitate the provision of a continuance of the current trial setting.

Given the foregoing, we conclude that the factors, which govern our analysis, militate in favor of permitting the Defendants to take the depositions that they have noted, and of allowing the expert testimony that they have identified. We do not, however, lightly view the Defendants' disregard of the Court's Scheduling Orders or of the additional expense to which the Plaintiff may be subjected, in order that the Defendants may present the expert testimony they now desire. Nevertheless, we do not wish to direct the imposition of sanctions, if sanctions should be warranted, in the abstractness of a vacuum. Rather, the depositions that the Defendants have noted will be completed by August 9, 1994. If, as the Plaintiff fears, the Defendants abuse the opportunity afforded to preserve their expert testimony, in one fashion or another, the Court is not powerless to act. See, e.g., *Rule 16(f), Federal Rules of Civil Procedure.*

■ As a consequence, we will defer the issue of sanctions until the depositions that

the Defendants have noted have been completed, and we will reconvene the Hearing in this matter on August 18, 1994, at 2:30 p.m. in Court Room No. 3 of the United States Courthouse in Duluth, Minnesota. By August 12, 1994, the Plaintiff should review the depositions and records, which were gathered in this or in the *ATCO* litigation, and which relate to the non-medical experts that the Defendants have identified. If the Plaintiffs proffer an adequate showing that the non-medical experts need to be deposed prior to trial, the Court will entertain such a Motion when the Hearing in this matter is reconvened. As well, by that same date, the Plaintiff should serve and file[8] a Memorandum which specifies the sanctions that they deem justified under all of the circumstances presented. In turn, by August 16, 1994, the Defendants shall serve and file a Memorandum, which is appropriately directed to the propriety of sanctions as a result of their violation of the Scheduling Orders of this Court.

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion for a Protective Order [Docket No. 423], which excludes the expert testimony of those witnesses who were identified in the Defendants' Amended Disclosure of Expert Witnesses, is DENIED.

2. That the Plaintiff's alternative Motion, for the imposition of sanctions, is deferred until a reconvening of the Hearing in this matter, which is scheduled for **August 18, 1994, at 2:30 o'clock p.m., in Courtroom No. 3 of the United States Courthouse in Duluth, Minnesota.**

3. That the parties shall serve and file Memoranda on the issue of sanctions as more fully directed within the text of this Opinion.

**8.** Filing shall be effective upon mailing but, in the interests of expediency, the parties respective

Memoranda should be telefaxed to the opposing party on the designated date of service.